## In re Aronson

*Raymond M. Seidel,* for petitioner.

*J. William Aronson,* for respondent.

KNIGHT, P. J., July 9, 1954.—J. William Aronson has been a patient in the Norristown State Hospital since February 14, 1954. He is suffering, according to the testimony of the physicians at the hospital, from an unusual form of mental disease which is characterized by periods of deep depression, followed by periods of great elation.

On April 8, 1954, his wife, Theresa P. Aronson, presented a petition to this court in which it was averred that "J. William Aronson is so mentally ill and decompensated that he is unable to take care of his property

and in consequence thereof is likely to dissipate or lose the same and to become the victim of designing persons."

A hearing was fixed for April 21st of which the alleged incompetent had notice. Hearings were held on April 21st, May 5th, and June 9th, at which testimony was heard.

J. William Aronson, although given ample opportunity to employ counsel, elected to represent himself. He was present at all the hearings, testified and submitted detailed accounts of his receipts and expenditures from 1947 to 1953, inclusive. To take from an individual the control of his or her property is a high-handed and drastic thing to do and the cases all hold that it should not be done unless the court is well-satisfied that it is necessary for the benefit of the alleged incompetent and the preservation of his or her estate.

Every day normal people are dissipating their property and every day normal people are the victims of designing persons but it is only in cases where persons are suffering from some mental disease or disorder and by reason of this infirmity are rendered incompetent to handle their property that the courts may step in and preserve their estates for their own good.

Mr. Aronson presents a difficult case. On the stand he demonstrated that he had an intimate and detailed knowledge of his property and certainly nothing he said or did as a witness would indicate that he was unable to manage his financial affairs. Up until December 1952 Mr. Aronson held a responsible position with a salary of approximately $10,000 per year. On December 31, 1952, Mr. Aronson either resigned or was discharged from his position and in 1953 his conduct became somewhat erratic. He would leave his home for several days at a time without telling his wife

where he had been, he made little effort to get employment and according to his own figures he spent more money in 1953 than he did in 1952, although the income from his salary had been cut off. He did this by consuming all the family savings, including two saving fund acounts of his children which were in the names of himself and wife as trustees. He gave checks when there were no sufficient funds in the bank to cover them. All this was foreign to his character and way of life before 1953. He has a scheme to beat the races and thinks he can make considerable money by putting out what is known as a "dope sheet" with advice as to what horses to bet on. He may be tempted to experiment at the tracks with his own formula. Dr. Warren W. Hamp, Jr., a witness from the State hospital, is of the opinion that Mr. Aronson would not become the victim of designing persons, but that he might dissipate his property; Dr. Noyes of the State hospital, is of the opinion that in one of his moods of optimism he may become the victim of designing persons.

After going over this record carefully we have reached the conclusion that we are not warranted in making a finding that J. William Aronson is so mentally ill that he is unable to take care of his property and is likely to dissipate the same and become the victim of designing persons.

We note in passing that the largest item of Mr. Aronson's estate is the home in Narberth, and title to that home is in himself and wife as tenants by the entireties, so it is safe from his debts.

We realize that this petition was not presented from any ulterior motive, but from a sincere desire to help Mr. Aronson.

And now, July 9, 1954, the rule is discharged and the petition dismissed at the cost of petitioner.